UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL GARCIA, an individual,<br><br>                              Plaintiff,<br><br>     v.<br><br>WALMART, INC.,<br><br>                              Defendant. | NO. 1:22-CV-3003-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT are Defendant's Motion for Summary Judgment (ECF No. 35) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 39). These matters were submitted for consideration with oral argument. Ada K. Wong and Jordan T. Wada represents the Plaintiff. Clarence M. Belnavis and Stephan Kendall represents Defendant. The Court has reviewed the record and files herein, considered the parties' arguments, and is fully informed. For the reasons discussed below, Defendant's Motion for Summary Judgment (ECF No. 35) is GRANTED, and Plaintiff's Motion for Partial Summary Judgment (ECF No. 39) is DENIED as moot.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

**BACKGROUND**

This matter relates to alleged disability discrimination Plaintiff suffered during his employment with Defendant Wal-Mart, Inc.  The following facts are undisputed except where noted.

Plaintiff began working for Defendant in 1994.  ECF No. 36 at 2, ¶ 1. Plaintiff has impaired vision due to a condition called retinitis pigmentosa.  *Id*. at ¶ 3.  To perform his job duties, Plaintiff was permitted to use a handheld magnifying glass, and exempted from using the small MC40 handheld computer units, and from operating heavy machinery, like forklifts.  *Id*. at 4, ¶ 15, at 3, ¶ 8. In April 2019, Plaintiff requested ongoing and additional accommodations related to his vision impairment.  *Id*. at 4, ¶¶ 12–14.

Defendant uses a third-party company, Sedgwick, to administer employee accommodation requests.  *Id*. at 3, ¶ 9.  A manager directed Plaintiff to contact Sedgwick regarding his requests.  *Id*. at 3, ¶ 10.  Sedgwick documented Plaintiff's request and sent a letter of acknowledgment.  *Id*. at 4, ¶ 16.  Sedgwick also instructed Plaintiff to have his doctor fill out a medical questionnaire.  *Id*.  Plaintiff gave the questionnaire to his care provider, Dr. John Carter, to fill out.  *Id*. at 5, ¶ 20.  Dr. Carter indicated Plaintiff suffered from "reduced VA" (visual acuity) but did not list any specific limitations or impairments.  *Id*. at 5, ¶ 21.  Consequently, Sedgwick was not able to identify any accommodations that might assist Plaintiff,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

1    and his accommodation requests were denied.  *Id*. at 6, ¶ 23.  Sedgwick sent

2    Plaintiff a denial letter explaining the reason for the denial.  *Id*. at 6, ¶ 24.

3            On June 1, 2019, Plaintiff took personal leave, which was scheduled to end

4    on June 30, 2019.  ECF No. 36 at 6, ¶¶ 26–27.  However, on July 4, 2019, Plaintiff

5    requested to extend his leave for medical purposes.  *Id*. at 6, ¶ 27.  Sedgwick also

6    handles employee leave requests.  *Id*. at 3, ¶ 9.  Sedgwick sent Plaintiff a letter

7    acknowledging the request and instructing Plaintiff to provide supporting medical

8    documentation.  *Id*. at 7, ¶ 28.  Sedgwick sent a second letter asking for Plaintiff's

9    medical documentation on July 26, 2019.  *Id*. at 7, ¶ 29.  That same day, Sedgwick

10   received a return-to-work form from Plaintiff's care provider, Dr. Cindy Mi,

11   indicating Plaintiff would be medically cleared to return to work on December 31,

12   2021.  *Id*. at 7, ¶¶ 31–32.  However, the return-to-work form was not sufficient to

13   support Plaintiff's requested medical leave.  *Id*. at 7, ¶ 34.  Sedgwick notified

14   Plaintiff of the deficiencies via phone.  *Id*.  In response, Plaintiff resubmitted the

15   same paperwork.  *Id*.

16           Plaintiff was ready to return to work in July 2019.  ECF No. 40 at 4, ¶ 15.

17   Plaintiff contacted Defendant's People Lead to discuss his return.  *Id*. at 4, ¶ 16.

18   Plaintiff contends the People Lead told him there were no jobs available and that

19   she needed to find an open position for him.  *Id*. at 4, ¶ 16.  Plaintiff then reached

20   out to a representative from the Washington State Department of Services for the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 3

Blind ("DSB") to help him return to work.  ECF No. 36 at 8, ¶ 38.  Plaintiff did not ask the representative to contact Sedgwick; rather, Plaintiff indicated he would handle the Sedgwick paperwork himself.  *Id*. at 8–9, ¶¶ 39–40.  Consequently, the representative was not aware of the doctors' paperwork on file with Sedgwick.  *Id*. at 9, ¶ 41.

Plaintiff contacted Sedgwick on November 13, 2019 to inquire about his return-to-work status.  *Id*. at 9, ¶ 42.  He was told he was restricted from work until December 31, 2021 per Dr. Mi's return-to-work form.  *Id*. at 9, ¶ 42.  Plaintiff never contacted Dr. Mi to request an earlier return-to-work date.  *Id*. at 8, ¶ 37.  Neither Defendant nor Sedgwick can override a doctor's work restriction.  *Id*. at 8, ¶ 36.  Plaintiff resigned his employment from Defendant on November 14, 2019.  *Id*. at 9, ¶ 43.

## DISCUSSION

### I.    Legal Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### A. Disability Discrimination

Defendant moves for summary judgment on Plaintiff's claims for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq*., on the grounds that Plaintiff cannot establish the requisite prima

1  facie elements.  ECF No. 35 at 8.  The ADA and WLAD prohibit an employer

2  from discriminating against an employee based on a disability.  42 U.S.C. §

3  12112(a); RCW 60.180(3).  To prevail on a disability discrimination claim,

4  Plaintiff must establish: (1) he was disabled under the ADA and WLAD, (2) he

5  was a qualified individual (i.e., he could perform the essential functions of the job

6  with or without reasonable accommodation), and (3) his employer discriminated

7  against him because of his disability.  *Poe v. Waste Connections US, Inc.*, 371 F.

8  Supp. 3d 901, 909 (W.D. Wash. 2019) (citing *Dunlap v. Liberty Nat. Products,*

9  *Inc.*, 878 F.3d 794, 798–99 (9th Cir. 2017); *Mikkelsen v. Public Utility District No.*

10  *1 of Kittitas County,* 189 Wash. 2d 516, 526–527 (2017)).  Washington courts look

11  to federal case law to "guide interpretation of the WLAD."  *Id*. (citation omitted).

12        The parties do not dispute the first two elements of the prima facie case.

13  Plaintiff's case turns on whether there are genuine issues of fact related to

14  Defendant's handling of Plaintiff's disability.

15                    *i.  Disparate Treatment*

16        Disparate treatment is an actionable claim of discrimination under both the

17  ADA and WLAD.  *Id*. at 911.  Plaintiff alleges he was treated "differently in terms

18  and conditions of his employment," and was ultimately terminated due to his

19  disability.  ECF No. 21 at 10.  Courts apply the *McDonnell Douglas* burden-

20  shifting framework to disparate treatment claims.  *Snead v. Metro. Prop. & Cas.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 6

*Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).  Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case by showing: (1) he was a member of a protected class, (2) he was qualified for the position, (3) he was subject to an adverse employment action, and (4) he was replaced or treated less favorably than a person outside the protected class.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  A plaintiff may rely on direct or circumstantial evidence to make a prima facie showing.  *Snead*, 237 F.3d at 1093.  If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate non-discriminatory reason for the adverse employment action.  *Id*.

Defendant moves for summary judgment on Plaintiff's disparate treatment claims, arguing Plaintiff cannot show he suffered an adverse employment action or that he was treated less favorably than employees without a disability.  As to the adverse employment action, Plaintiff argues he was forced to remain on involuntary leave, and was ultimately forced to resign, because Defendant refused to find a position for Plaintiff after Plaintiff took leave.  ECF No. 52 at 6.  The evidence does not support Plaintiff's claims.  First, Plaintiff took voluntary personal leave beginning June 1, 2019.  ECF No. 36 at 6, ¶ 26.  Plaintiff's leave period was scheduled to end June 30, 2019, but he requested to extend his leave for medical purposes on July 4, 2019.  *Id*. at 6–7, ¶¶ 27–28.  Sedgwick sent a letter to Plaintiff on July 5, 2019 confirming the leave request and instructing Plaintiff to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

provide medical documentation.  *Id*. at 7, ¶ 28.  Plaintiff returned the provided medical form, filled out by Plaintiff's doctor, Dr. Cindy Mi, on July 26, 2019.  *Id*. at 7, ¶¶ 30-31.  Dr. Mi indicated Plaintiff would be medically cleared to return to work on December 31, 2021.  *Id*. at 7, ¶ 32.

However, Plaintiff was ready to return to work in July 2019.  ECF No. 40 at 4, ¶ 15.  Plaintiff spoke to Defendant's People Lead about returning to work.  *Id*. at 4, ¶ 16.  Plaintiff alleges he was told there were no jobs available to him.  *Id*. at 5, ¶ 16.  However, the evidence indicates the reason Plaintiff was not returned to work was because of the notation from Dr. Mi indicating Plaintiff could not return to work until December 31, 2021.  ECF No. 62 at 6.  Sedgwick and Defendant cannot override a doctor's note restricting an employee from working for a certain period of time.  ECF No. 36 at 8, ¶ 36.  Plaintiff did not contact Dr. Mi to request an earlier return to work date.  *Id*. at 8, ¶ 37.  Plaintiff was informed of the reason for the denial of his return-to-work request when he contacted Sedgwick on November 13, 2019.  *Id*. at 9, ¶ 42.  Plaintiff then resigned on November 14, 2019.  *Id*. at 9, ¶ 43.

Based on the uncontroverted evidence, Plaintiff has failed to establish he suffered an adverse employment action.  Rather, Plaintiff's "forced" leave period was created by his own failure to seek an earlier return-to-work date from his doctor.  Notably, Dr. Mi indicated she would have provided an earlier date had it

been requested.  ECF No. 62 at 4.  Plaintiff's "termination" was also of his own

making.  By his own admission, Plaintiff resigned voluntarily out of frustration.

*Id*.

Finally, Plaintiff does not provide evidence that Defendant treated him less

favorably than other employees without disabilities—his complaints relate only to

his experience with the leave and accommodation request process.  Accordingly,

Plaintiff has failed to establish a prima facie case for disparate treatment under the

ADA and WLAD.  Even if Plaintiff had successfully pleaded a prima facie case,

Defendant has provided a legitimate, non-discriminatory reason for the conclusion

of Plaintiff's employment, to wit, Plaintiff failed to provide the necessary medical

paperwork and Plaintiff resigned on his own volition.  Defendant is entitled to

summary judgment on Plaintiff's disparate treatment claims.

## ii.  *Failure to Accommodate*

An employer's failure to provide reasonable accommodation to an employee

with a disability is an actionable claim of discrimination under the ADA and

WLAD.  *Poe*, 371 F. Supp. 3d at 910 (citing *Dunlap*, 878 F.3d 794; *Davis v.

Microsoft Corporation,* 149 Wash. 2d 521 (2003)).  Plaintiff alleges Defendant

failed to provide reasonable accommodation for his disability and failed to engage

in the interactive process after receiving notice of Plaintiff's request for

accommodation.  ECF No. 21 at 11–12.  To establish a prima facie case for a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 9

failure to accommodate claim, Plaintiff must show (1) he is a qualified individual, (2) his employer received adequate notice of his need for an accommodation, and (3) he was denied a reasonable accommodation that was available and the accommodation did not place an undue hardship on the employer. *Id.* (citing *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018)).

In the Ninth Circuit, notice to the employer triggers a duty to engage in an "interactive process through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp*, 889 F. 3d at 1095 (internal quotations omitted). The "interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *U.S. E.E.O.C. v. UPS Supply Chain Solutions,* 620 F.3d 1103, 1110 (9th Cir. 2010) (citation and internal quotations omitted). An employer's duty to accommodate "is a continuing duty that is not exhausted by one effort." *Id.* at 1110–11 (citation and internal quotations omitted). In other words, when an employer becomes aware that an existing accommodation is no longer working, the employer must continue to engage in the interactive process to determine if another reasonable accommodation exists. *Id*.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

1    Defendant moves for summary judgment, arguing it did not receive adequate

2    notice of Plaintiff's requested accommodations, and therefore, it cannot be held

3    liable for failing to accommodate Plaintiff's requests.  ECF No. 35 at 12.  As an

4    initial matter, Defendant can hardly claim it did not receive adequate notice of

5    Plaintiff's requested accommodations.  Defendant was aware of Plaintiff's visual

6    impairments and had allowed him to use a magnifying glass to perform the duties

7    of his job.  ECF No. 36 at 2, ¶¶ 3, 6.  Defendant also did not require Plaintiff to use

8    a forklift or the MC40 handheld computers, as required by the job position, due to

9    Plaintiff's limited vision.  *Id*. at 3, ¶ 8; at 4, ¶ 15.  Therefore, Defendant was well

10   aware of Plaintiff's need for accommodation.  When Plaintiff contacted Sedgwick,

11   at his manager's behest, to request continued use of the magnifying glass and to

12   see if it was possible to change the font size of the MC40 device, Defendant was

13   adequately notified of Plaintiff's need to continue the interactive process regarding

14   his accommodation.  *Id*. at 3, ¶ 10; at 4, ¶¶ 13–14.

15   The next inquiry is whether Defendant and Plaintiff engaged in good faith in

16   the interactive process.  "Where a breakdown in the interactive process occurs, a

17   court should attempt to isolate the cause of the breakdown and then assign

18   responsibility so that liability . . . ensues only where the employer bears

19   responsibility for the breakdown."  *Goos v. Shell Oil Co.*, 451 F. App'x 700, 702

20   (9th Cir. 2011) (citation and internal quotations marks omitted).  Upon Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 11

request for continued accommodation, Sedgwick sent Plaintiff written acknowledgment of his request and instructed Plaintiff to have his doctor fill out the provided medical questionnaire. ECF No. 36 at 4, ¶ 16. Plaintiff took the form to Dr. John Carter but did not speak with Dr. Carter at that time. *Id.* at 5, ¶ 20. Dr. Carter filled out the form on May 14, 2019 and indicated Plaintiff had "reduced VA" (visual acuity) but did not list any specific limitations or impairments. *Id.* at 5–6, ¶¶ 21–22. Due to the deficiencies in Plaintiff's paperwork, Sedgwick was unable to determine what kind of accommodations could be provided for Plaintiff and denied the request. *Id.* at 6, ¶¶ 23–24.

Sedgwick sent Plaintiff a denial letter on June 7, 2019, explaining the reason for the denial and indicating Plaintiff should report for his next scheduled work shift, as there were no medical reasons to indicate he could not perform the essential duties of his job. ECF No. 37-6 at 2. Sedgwick also recommended Plaintiff discuss with Defendant the possibility of continuing the use of the magnifying glass and changing the MC40 font size. ECF No. 36 at 6, ¶ 25. The denial letter also outlined how Plaintiff could appeal the decision. ECF No. 35 at 4. It does not appear Plaintiff appealed the decision.

Beginning June 1, 2019, Plaintiff began a period of personal leave. ECF No. 36 at 6, ¶ 26. Importantly, Plaintiff did not take the leave in response to the denial letter; rather, Plaintiff took leave due to a "head cold" and to explore a new

1    treatment option for his vision.  ECF Nos. 21 at 4; 37-15 at 32.  The period was

2    scheduled to end June 30, 2019, but Plaintiff requested to extend his leave for

3    medical reasons on July 4, 2019.  ECF No. 36 at 6, ¶ 27.  Sedgwick sent Plaintiff

4    an acknowledgement letter on July 5, 2019 and requested medical documentation.

5    *Id*. at 7, ¶ 28.  Sedgwick sent another letter on July 26, 2019, again requesting the

6    medical documentation.  *Id*. at 7, ¶ 29.  That same day, Sedgwick received a

7    return-to-work form from a different care provider, Dr. Mi, indicating Plaintiff

8    would be medically cleared to return to work on December 31, 2021.  *Id*. at 7, ¶¶

9    31–32.  However, the paperwork lacked the requisite information to support

10   Plaintiff's request for medical leave; Sedgwick notified Plaintiff of the

11   deficiencies.  *Id*. at 7, ¶ 34.  In response, Plaintiff resubmitted the same form.  *Id*.

12        Beginning sometime in July or August 2019, Plaintiff began communicating

13   with Defendant's People Lead and with Sedgwick about returning to work.  ECF

14   Nos. 40 at 4, ¶ 16; 37-15 at 55.  Plaintiff contends they told him they needed to

15   find a position for him before they could bring him back to work.  ECF No. 40 at 4,

16   ¶ 16.  However, the uncontroverted evidence shows Plaintiff was not cleared to

17   return to work until December 31, 2021, per his doctor's return-to-work form.

18   ECF Nos. 36 at 8, ¶ 35; 62 at 6.  Neither Sedgwick nor Defendant was authorized

19   to override a medical restriction.  *Id*. at 8, ¶ 36.  In order to return to work before

20   December 31, 2021, Plaintiff needed to request an earlier release date from his

1    doctor, but Plaintiff failed to do so.  *Id*. at 8, ¶ 37.

2         Plaintiff also enlisted the help of a representative from the Washington State

3    Department of the Blind ("DSB") to help him return to work.  ECF No. 40 at 5, ¶

4    18.  The representative indicated the services provided by DSB are client-driven,

5    meaning she was limited to provide only services that Plaintiff requested.  ECF No.

6    37-19 at 3.  Plaintiff did not ask the counselor to speak with Sedgwick and

7    indicated he would handle the necessary Sedgwick paperwork.  *Id*.  Plaintiff also

8    did not inform the counselor that he had submitted incomplete or insufficient

9    paperwork to Sedgwick related to his requested leave and accommodations.  *Id*. at

10   13.

11        On November 13, 2019, Plaintiff again contacted Sedgwick about returning

12   to work.  ECF No. 36 at 9, ¶ 42.  He was informed that his return-to-work date was

13   still December 31, 2021, per his doctor's paperwork.  *Id*.  According to the DSB

14   representative, employers appropriately deny accommodation requests where the

15   necessary documentation is not provided.  ECF No. 37-19 at 7.  Plaintiff resigned

16   from his employment on November 14, 2019.  ECF No. 36 at 9, ¶ 43.

17        Based on the evidence of record, it appears Plaintiff caused the breakdown

18   in the interactive process by failing to provide the necessary paperwork.

19   Conversely, Defendant, via Sedgwick, promptly communicated with Plaintiff

20   regarding his requests for leave, and followed up with Plaintiff after receiving

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 14

incomplete paperwork from Plaintiff's doctors.  Plaintiff also resigned on his own

accord—his employment was never terminated by Defendant.  The Court finds

Defendant engaged in good faith in the interactive process regarding Plaintiff's

requested accommodations and cannot be held liable for failing to accommodate

Plaintiff.  Defendant is entitled to summary judgment on Plaintiff's failure to

accommodate claims.

### iii.  Retaliation

Retaliating against an employee who opposes disability discrimination is an

actionable claim for discrimination under the ADA and WLAD.  42 U.S.C. §

12203(a); RCW 49.60.210.  The *McDonnell Douglas* burden shifting framework

applies to disability retaliation claims.  *Erickson v. Biogen, Inc.*, 417 F. Supp. 3d

1369, 1382 (W.D. Wash. 2019) (citing *Curley v. City of N. Las Vegas*, 772 F.3d

629 (9th Cir. 2014); *Francom v. Costco Wholesale Corp.*, 98 Wash. App. 845

(2000)).  A plaintiff must establish a prima facie case by showing (1) he engaged

in protected activity, (2) he was subjected to an adverse employment action, and

(3) there is a causal link between the protected activity and the adverse action.  *Id*.

Defendant moves for summary judgment on Plaintiff's retaliation claims on the

grounds that Plaintiff did not suffer an adverse employment action.  ECF No. 35 at

19.

It is unclear what facts Plaintiff is alleging to support a retaliation claim.  *See*

ECF No. 21 at 12.  In any event, the Court has already determined Plaintiff cannot show he suffered an adverse employment action because Plaintiff's extended leave period and ultimate exit from Defendant's employ were of his own creation: he failed to provide the necessary and completed paperwork to support his leave and accommodation requests; he failed to follow up with his care provider to request an earlier return-to-work date; and he ultimately resigned on his own volition. Because Plaintiff cannot establish an adverse employment action, the remaining prima facie elements for his retaliation claims necessarily fail.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA and WLAD retaliation claims.

Based on the evidence before the Court, there are no genuine issues of material fact regarding Defendant's treatment of Plaintiff's disability.  Plaintiff has failed to establish Defendant discriminated against him during his employment. Plaintiff's causes of action arising under the ADA and WLAD are dismissed with prejudice.

**B. Infliction of Emotional Distress**

Defendant moves for summary judgment on Plaintiff's claims for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED) on the grounds that there is no evidence to support Plaintiff's claims.  ECF No. 35 at 14.  Although it is not apparent from Plaintiff's Complaint (*see* ECF No.

21), Plaintiff's claims for IIED and NIED appear to be premised on Defendant's conduct regarding Plaintiff's attempt to return to work following a period of leave. ECF No. 52 at 18.  Plaintiff's responsive briefing alleges Defendant is liable for IIED and NIED under the theory of respondeat superior.  ECF No. 52 at 18. Defendant moves for summary judgment on the grounds that this claim necessarily fails because Plaintiff's IIED and NIED claims fail.  ECF No. 62 at 10.

### i. Intentional Infliction of Emotional Distress

Washington courts require three elements to prove IIED: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wash. 2d 192, 195 (2003) (citations omitted).  Extreme and outrageous conduct is that which is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted).  It is not "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*  While each of the three elements are questions of fact, the court first decides the threshold issue of whether "the conduct was sufficiently extreme to result in liability." *Spicer v. Patnode*, 9 Wash. App. 2d 283, 292–93 (2019) (quotations and citation omitted).

Plaintiff has not submitted any evidence to support his allegation that Defendant acted with extreme and outrageous conduct.  As the non-moving party,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 17

Plaintiff must produce "facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021). Plaintiff's responsive briefing asserts only conclusory statements that are unsupported by specific evidence in the record. ECF No. 52 at 19. Moreover, while Plaintiff may have been frustrated by the leave and accommodation request process, no reasonable jury could find Defendant's conduct was sufficiently extreme and outrageous to trigger liability. Conversely, the evidence before the Court supports Defendant's claim that it acted reasonably with regard to Plaintiff's leave and accommodation requests. *See* ECF No. 37-19 at 7. As such, Defendant is entitled to summary judgment on Plaintiff's IIED claim.

### ii.  *Negligent Infliction of Emotional Distress*

To prevail on an NIED claim, a plaintiff must prove the existence of a duty, breach of that duty, proximate cause, and damage or injury. *See Snyder v. Med. Serv. Corp. of E. Wash.,* 145 Wash. 2d 233, 243 (2001). Additionally, a plaintiff's emotional response must be reasonable under the circumstances and must be corroborated by "objective symptomatology." *Hegel v. McMahon,* 136 Wash. 2d 122, 133 (1998). To satisfy the objective symptomatology requirement, the "emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Id. at* 135 (symptoms must constitute a diagnosable emotional

1  disorder).

2       Plaintiff's pleadings and responsive briefing fall woefully short to support

3  his claim for NIED.  First, an employee may only recover damages for emotional

4  distress in an employment context if the factual basis for the claim is distinct from

5  the factual basis for the discrimination claim and the acts of the employer do not

6  occur in the context of employee discipline.  *Haubry v. Snow*, 106 Wash. App.

7  666, 678 (2001).  Here, Plaintiff alleges Defendant "breached its duty to

8  accommodate [Plaintiff's] disability, resulting in emotional distress."  ECF No. 52

9  at 20.  Based on this statement, there is no compensable claim because the factual

10 basis for Plaintiff's NIED claim is not distinct from Plaintiff's disability

11 discrimination claims.  Second, Plaintiff has not provided any evidence indicating

12 he received medical treatment for his emotional distress.  Without objective

13 medical evidence, Plaintiff's claim for NIED fails.  *Haubry*, 106 Wash. App. At

14 679.  Defendant is entitled to summary judgment on Plaintiff's NIED claim.

15      Because Plaintiff's claims for intentional and negligent emotional distress

16 fail, his claim for respondeat superior also fails.  Defendant is entitled to summary

17 judgment on the claim.  Plaintiff's causes of action for IIED, NIED, and

18 respondeat superior are dismissed with prejudice.

19          **C. Negligent Supervision, Hiring, and Training**

20      Defendant moves for summary judgment on Plaintiff's claim for negligent

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 19

supervision, hiring, and training on the grounds that Plaintiff has failed to provide evidence that Defendant's employees acted outside the scope of their employment. ECF No. 35 at 20. To succeed on a claim for negligent supervision, a plaintiff must show: "(1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm . . . ; (3) the employer knew, or should have known in the exercise of reasonable care that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries . . . ." *Briggs v. Nova Services,* 135 Wash. App. 955, 966–67 (2006).

Plaintiff does not allege, much less provide evidence, that any employee acted outside the scope of their employment with regard to Plaintiff's leave and accommodation requests. In fact, Plaintiff alleges precisely the opposite is true; Plaintiff's emotional distress claims are premised on the theory of respondeat superior. Without this essential element, Plaintiff's negligent supervision claim fails, and the Court need not address the remaining elements. Defendant is entitled to summary judgment on the claim. Plaintiff's claim for negligent supervision, hiring, and training is dismissed with prejudice.

### D. Plaintiff's Motion for Partial Summary Judgment

Having dismissed all claims asserted against Defendant in this matter, Plaintiff's Motion for Partial Summary Judgment is denied as moot.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 20

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Summary Judgment (ECF No. 35) is **GRANTED**.  The causes of action alleged against Defendant are **DISMISSED with prejudice**.

2.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 39) is **DENIED as moot**.

3.  All remaining motions are **DENIED** as moot.  The Pretrial Conference and Jury Trial are **VACATED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **close** the file.

DATED January 25, 2023.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 21